UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-21431-CIV-JORDAN/BROWN

EVE BARYS and DWAYNE OSTROM
ex rel. UNITED STATES and the STATE OF
FLORIDA,

        Plaintiffs,

v.

VITAS HEALTHCARE CORPORATION,
VITAS HOSPICE SERVICES, LLC,
VITAS HEALTHCARE CORPORATION OF
FLORIDA, ET AL.,

        Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendants
Vitas Healthcare Corporation, Vitas Hospice Services, LLC and Vitas Healthcare Corporation of
Florida (collectively "Vitas"), through undersigned counsel, hereby move to dismiss the
complaint filed by Relators Eve Barys and Dwayne Ostrom ("Complaint").

### Summary of Argument

The Court should dismiss the Complaint because it falls woefully short of the pleading
requirements for causes of action under the federal False Claims Act, 31 U.S.C. § 3729, *et seq.*
("FCA"). In this case, two disgruntled former employees of Vitas – a national leader and pioneer
in providing hospice care to the terminally ill – have alleged without detail that Vitas submitted
false claims to Medicare to obtain hospice benefits. The Complaint, however, does not identify,
let alone describe, a single allegedly false claim made by any Defendant. The submission of
such a claim is indispensable to liability under the FCA, but this Complaint does not identify any

specific instance where such a claim was made. That omission is just one of many ways that this Complaint violates Fed. R. Civ. P. 9(b), which heightens the pleading standards in fraud cases and requires a plaintiff to state "with particularity" the circumstances allegedly constituting fraud.

Relators' failure to comply with Rule 9(b) is particularly prejudicial given the extraordinary (and unfounded) nature of Relators' allegations. The gravamen of Relators' case is that Vitas physicians continually re-certified hospice patients as eligible to receive Medicare hospice benefits, when in fact those patients were no longer eligible. Hospice eligibility, however, is dependent on a physician's clinical judgment that a patient has a life expectancy of six months or less if his disease runs its normal course. 42 C.F.R. § 418.22; 42 U.S.C. § 1814(a)(7). Relators make this allegation without identifying a single patient whom they contend was ineligible, let alone identifying the circumstances surrounding any such patient's condition. The need for specific patient information is critical because the process of determining whether a patient has a life expectancy of six months or less if the disease runs its normal course depends upon a physician's medical judgment based upon an assessment of the individual circumstances of the patient. Indeed, the government agency that administers the benefit at issue has itself counseled that predicting life expectancy is not, and cannot be, an exact science,[1] and that simply because a hospice patient lives beyond six months does not mean that the patient was not eligible for hospice care. *See Medicare: More Beneficiaries Use Hospice But For Fewer Days of Care*, GAO/HEHS-00-182, at 22 (2000) ("According to Medicare

---

[1]     *See* Preamble to Final Hospice Care Regulations, 70 Fed. Reg. 70,532, 70,542 (Nov. 22, 2005) ("[We] recognize that prognosis is not an exact science, and that the impact of a hospice's services may sometimes lead to brief periods of improvement. . . . We have tried to avoid prescriptive time frames for discharge planning, since we have long been aware that merely the attention that hospice services give to a patient can have a beneficial effect, creating the impression that the individual may no longer be 'actively dying' and therefore ineligible for the Medicare hospice benefit. Therefore, we cannot offer a specific number of days or weeks that a patient may be stable and thus not eligible.").

program guidance to all hospices, the fact that a hospice patient lives beyond 6 months does not, by itself, constitute grounds for a determination that the patient was never eligible for hospice care or that Medicare does not cover services provided to the patient.").

The "federal courts are increasingly reluctant to allow fishing expeditions by whistle-blowers employing the FCA and hoping for federal intervention. The whistle must be blown not only loudly, but with Rule 9(b) particularity in the complaint before the courts will listen." *United States ex rel. Atkins v. Mcinteer*, 345 F. Supp. 2d 1302, 1305 (N.D. Ala. 2004). Relators' FCA claims in Counts I and II fail the 9(b) particularity requirement, and should be dismissed. The Court should likewise dismiss Relators' FCA conspiracy claim in Count III, which not only fails to comply with Rule 9(b), but also fails to allege an agreement and other elements of a conspiracy.

Finally the Court should dismiss Count IV, brought by Plaintiff Barys under the FCA's retaliatory discharge provision. Barys does not allege that she put any Defendant, let alone each of the Defendants, on notice of any FCA violation, and does not allege that she was fired for having done so. Absent these essential allegations, there can be no claim for retaliatory discharge. Count IV, like the rest of this insufficient Complaint, should be dismissed.

### Relators' Allegations[2]

On June 15, 2004, Relators Ostrom and Barys filed the Complaint under the FCA's *qui tam* provisions.[3] Vitas is one of the largest hospice providers in the country, with hospice

---

[2] Vitas strongly disputes many of Relators' allegations, but accepts them as true, as it must, for purposes of this motion to dismiss. *See, e.g., United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1330 n.2 (11th Cir. 2002).

[3] Beyond the three named Defendants, Relators claim to be suing "all other corporations or other legal entities in the United States of America which are owned, in whole or in part, or operated by VITAS Healthcare Corporation." Relators do not identify these other corporations

3

programs in multiple states. *See* Compl. ¶¶ 76, 122. Hospice care is an approach to caring for terminally ill individuals which provides comfort and pain relief, as opposed to curative care for the terminal illness. *Id.* ¶ 24, 42 C.F.R. § 418.24(b). The patient must acknowledge he is foregoing curative treatment. 42 C.F.R. § 418.24(b).

A hospice uses an interdisciplinary team to provide physical, psychosocial, spiritual and emotional services to terminally ill patients and their family members. *See* 42 C.F.R. §§ 418.68, 418.84, 418.86, 418.88, 418.94, 418.202. Hospice services may be provided in several venues, including the patient's home, a hospital or a designated hospice facility. *See* Compl. ¶ 25; 42 C.F.R. § 418.302. There is no limit on the duration of the Medicare hospice benefit for a given patient. The benefit periods consist of two initial 90-day periods and an unlimited number of 60-day periods. *See* Compl. ¶¶ 52, 57; 42 C.F.R. § 418.21. Prior to the start of a new benefit period, a physician must recertify that at the time of the recertification, the individual's prognosis is for a life expectancy of six months or less if the illness runs its normal course. Compl. ¶¶ 54, 55; 42 C.F.R. § 418.22. Certifications and recertifications are based on the physician's clinical judgment. *See* Compl. ¶ 56; 42 C.F.R. § 418.22. While the average period of hospice care might be less than two months, if a patient continues to be terminally ill but is fortunate enough to outlive this life expectancy, he remains eligible for the Medicare hospice benefit whether he lives one, two or three additional years. *Medicare: More Beneficiaries Use Hospice But for Fewer Days of Care*, GAO/HEHS -00-182, at 12, 22, 49 (2000).

Barys and Ostrom are former Vitas employees and are now married to each other. Barys was the "Director of Admissions." Compl. ¶ 15. Ostrom was a "Vice President – Hospice Operations Support." *Id.* ¶ 17.

---

or entities, make no factual allegations about them, and do not allege any basis upon which the named Defendants could be liable for the acts of others.

Allegedly based upon their knowledge as well as "information and belief," *see id.* ¶¶ 15, 17, 18, these former employees allege Vitas systematically submitted false information to the federal government about the status of terminally-ill hospice patients in order to obtain the Medicare hospice benefit.[1]   Relators do not assert that Vitas claimed money from Medicare for patients who had been discharged or were deceased.   Instead, they contend that Vitas falsely re-certified hospice patients as terminally ill when in fact they were not terminally ill, and did so to continue receiving the Medicare hospice benefit from the government.   Relators allege that Vitas adopted "policies and practices" designed to keep patients in the hospice program, and "implemented a system to promote the re-certification of patients for the [Medicare hospice benefit] absent a physician's proper and conscientious clinical judgment concerning the patients' prognosis."   *Id.* ¶¶ 86, 87.[5]   Relators point to incentive programs that, they say, gave employees an incentive to re-certify hospice patients as terminally ill without regard to their actual condition.   *Id.* ¶¶ 115, 124.   Relators make sweeping allegations that Vitas has been "keeping patients in its program" when in fact they should no longer be receiving hospice care.   The Complaint does not identify, by name, date, location or diagnosis, any individual patient allegedly "kept[] in the program" unjustifiably or allegedly re-certified without basis.

The Complaint asserts that Barys, at some point in time, "specifically addressed her concerns about excessive [lengths of stay]" with "General Manager, Dian Backoff and Vice

---

[1]   Although Relators also reference Medicaid, they do not allege that Vitas submitted any false claims for Medicaid benefits.

[5]   Relators make this allegation even though their own exhibits attached to the complaint contradict their claims.   For example, Relators' Exhibit B, an excerpt from a Vitas manual, instructs clearly that "the hospice Medical Director or Team Physician is required to recertify the patient as terminally ill *based on whether or not the patient continues to have a prognosis of six months or less*" (emphasis added).   The fact that Relators' own exhibits contradict their allegations demonstrates the importance of ensuring strict compliance with the requirements of Rule 9(b).

5

President, Hospice Operations, Ian Viente," only to be "terminated shortly after reporting her concerns." *Id.* ¶¶ 138, 139. Relators also assert that Barys "ran a Vitas report concerning [lengths of stay]," and had that report "in a folder on her desk on the day she was fired by Vitas." *Id.* ¶ 140.

The Complaint contains four counts under the FCA. Count I alleges Vitas knowingly presented or caused to be presented false claims for payment of hospice services which the government paid to its detriment, in violation of 31 U.S.C. § 3729(a)(1). Count II alleges Vitas knowingly made, used, or caused to be made or used false records to have false claims for hospice services paid by the government, in violation of 31 U.S.C. § 3729(a)(2). Count III alleges a conspiracy to violate the FCA, in violation of 31 U.S.C. § 3729(a)(3). Count IV alleges retaliatory discharge under the FCA, in violation of 31 U.S.C. § 3730(h).[6]

## Argument

This Court should dismiss the Complaint in its entirety. Relators' FCA claims in Counts I, II and III fail because Relators' allegations do not remotely meet the particularity requirements of Rule 9(b). Relators' conspiracy claim in Count III suffers from additional defects, including the failure to allege an agreement, which is the linchpin of any conspiracy. Finally, Plaintiff Barys' retaliatory discharge claim in Count IV fails to state a claim because she does not allege the essential elements of such a claim under the FCA.

## I. RELATORS' FALSE CLAIMS ACT ALLEGATIONS DO NOT COMPLY WITH RULE 9(b).

Claims under the FCA are subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Relators have failed to comply with that rule. Most

---

[6]      Relators allege they seek damages under the Florida False Claims Act, but do not include any allegations about the Act or plead any count under the Act.

obviously, they fail to allege, let alone with particularity, a single specific false statement or claim made by any Vitas entity to secure the payment of money by the government.

**A.      Rule 9(b) Requires Fraud Allegations Be Pled with Particularity.**

Rule 9(b) requires that, in all claims alleging fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Sweeping and imprecise allegations and pleading based on "information and belief," rather than fact, that might pass muster in other contexts cannot survive Rule 9(b), and a failure to satisfy the pleading requirement of Rule 9(b) is grounds for dismissal.

**B.      Relators' Allegations of False Claims Act Violations are Subject to Rule 9(b).**

It is well settled in this Circuit that complaints under the FCA are subject to the heightened pleading standard of Rule 9(b). *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005), *petition for cert. filed*, 74 USLW 3588 (Apr. 6, 2006); *Clausen*, 290 F.3d at 1309-10. That is so because the "act of submitting a fraudulent claim to the government is the *sine qua non* of a False Claims Act violation." *Corsello*, 428 F.3d at 1012 (citation omitted).[ ]

The Eleventh Circuit has emphasized that Rule 9(b) serves an especially critical role in the context of FCA violations by discouraging plaintiffs from advancing unfounded claims in hopes of windfall recoveries under the statute. *See Clausen*, 290 F.3d at 1313 n.24 ("When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants'

---

[ ]      Relators allege that Vitas violated sections 3729(a)(1)-(2) of the False Claims Act, which apply to any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government[.]" To state a cause of action under section 3729, a plaintiff must allege at least three elements:  (1) the knowing submission, (2) of a claim for payment from the government, (3) that is false or fraudulent. *See Clausen*, 290 F.3d at 1311 n.19.

goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements."). The Court of Appeals has also emphasized that the unavailability of discovery does not preclude dismissal of an FCA complaint that lacks the express specificity and detail required by the rule. *See id.*; *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559 (8th Cir. 2006) (affirming dismissal and rejecting request to permit discovery to satisfy Rule 9(b)); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) (holding "that a *qui tam* relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery"); *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 309 (5th Cir. 1999) ("[T]he False Claims Act grants a right of action to private citizens only if they have independently obtained knowledge of fraud. ... A special relaxing of Rule 9(b) is a *qui tam* plaintiff's ticket to the discovery process that the statute itself does not contemplate.").

**C.    Rule 9(b) Requires an FCA Relator Allege Specific Details Regarding the Alleged Fraud.**

As applied to FCA claims, Rule 9(b) compels a plaintiff to allege specific details about the defendant's fraudulent conduct, including "'facts as to time, place, and substance of the defendant's alleged fraud,' [and] 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Corsello*, 428 F.3d at 1012 (quoting *Clausen*, 290 F.3d at 1310). The allegations supporting a FCA complaint must provide at least some of the "who, what, where, when, and how" of the alleged fraudulent submissions to the government. *See Corsello*, 428 F.3d at 1013; *see also United States ex rel. Carroll v. JFK Med. Ctr.*, No. 01-8158-Civ-Ryskamp, 2002 WL 31941007, at *4, (S.D. Fla. Nov. 15, 2002) citing *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) ("Rule 9(b) is satisfied

8

if a plaintiff pleads the following: (1) precisely what statements were made in what documents or oral representation or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the context of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (same).

A relator must also allege facts giving an "indicia of reliability" to his claims.  *See Corsello*, 428 F.3d at 1013; *Clausen*, 290 F.3d at 1311.  A relator must allege he was in a position to know the falsity of the claims in question and the purpose of the defendant's scheme. *See Corsello*, 428 F.3d at 1014.

### D.   Relators' Allegations Do Not Remotely Satisfy Rule 9(b).

Relators' allegations do not begin to satisfy Rule 9(b)'s particularity requirement. Relators fail to identify a single false claim or statement submitted to the government – by patient, by amount, or by invoice.  Because Relators do not identify any specific false claim or statement, they cannot allege the additional information required, such as why the claim was false, when the claim was submitted, the employees who prepared and/or submitted the claim, and the defendant or program for which the claim was submitted.  Instead, Relators rely on exactly the kind of vague, conclusory allegations that Rule 9(b) flatly prohibits.

Most glaring is Relators' failure to identify any specific patient allegedly re-certified for hospice care without basis.  Relators' entire theory is that Vitas recertified patients who were no longer eligible for hospice care and submitted claims for the Medicare hospice benefit associated with these patients.  That theory is unfounded; for present purposes, however, what matters is that it rests on sweeping generalizations, with none of the specificity required by Rule 9(b).

9

Paragraph six of the Complaint illustrates this problem.  Rather than offer specifics, it simply alleges without detail that "Vitas has knowingly, deliberately, and systematically overcharged federal health care programs for hospice services rendered to patients who were ineligible for the hospice benefits provided by those programs."  Compl. ¶ 6.  Similarly, paragraph 85 asserts that "Vitas submitted claims to the United States for payment for services rendered to patients based on the false re-certification of patients as eligible for the [Medicare Hospice Benefit]."  In no instance do Relators actually identify a patient "ineligible for the hospice benefits provided by those programs" or why Relators contend that any specific patient was "false[ly] re-certifi[ed] . . . as eligible for the [Medicare Hospice Benefit]."  Compl. ¶¶ 6, 85

The Eleventh Circuit has emphasized that a relator must identify specific false claims allegedly submitted to the government, and cannot rely instead on generalized allegations of systematic behavior.  In *Clausen*, for example, a corporate outsider alleged in his complaint extensive details of six "schemes" by LabCorp to conduct "unauthorized, unnecessary or excessive medical tests."  290 F.3d at 1303.  According to the relator, LabCorp's desire to increase its testing revenue motivated the alleged "schemes" and ultimately led LabCorp to file false Medicare claims.  Despite the relator's extensive allegations, the Eleventh Circuit upheld the district court's dismissal of the complaint because it did not provide any factual support for his conclusory assertion that false claims for payment were submitted to the government.  *See id.* While the complaint was specific as to the types of alleged false claims, and even provided some names of patients (which Relators here do not), "no copies of a single actual bill or claim for payment were provided."  *Id.* at 1306.  As the Court succinctly stated, "[a]t most, Clausen's complaints raise questions about LabCorp's internal testing policies.  But nowhere in the blur of

10

facts and documents assembled by Clausen . . . can one find any allegation, stated with particularity, of a false claim actually being submitted to the Government." *Id.* at 1312. *Clausen* is directly on point.

Similarly, in *United States ex rel. Butler v. Magellan Health Services, Inc.*, 101 F. Supp. 2d 1365 (M.D. Fla. 2000), the relator alleged that the defendants fraudulently extended the duration of patient stays without regard to medical necessity, encouraged unnecessary patient admissions, and then submitted false claims based upon these decisions. The complaint contained general allegations to the effect that administrative staff were directed to pressure a doctor to rescind a discharge of a patient whose discharge was medically appropriate, and that doctors were encouraged to lengthen patient stays. The defendant moved to dismiss, and the court granted the motion, holding that "[w]hile these allegations are illustrative of the type of fraud Plaintiff alleges, none of these facts address any false claim or any document bearing a false claim on the part of the Defendants." *Id.* at 1369. *Butler*, like *Clausen*, is decisive here. *See also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 879 (6th Cir. 2006), *petition for cert. filed*, 75 USLW 3074 (Aug. 9, 2006) (No. 06-220) (affirming dismissal where plaintiff failed to identify a specific false claim submitted directly to the government); *Carroll*, 2002 WL 31941007, at *4 (dismissing FCA complaint where plaintiffs "identified patients who *could* have been used to perpetuate a fraudulent overbilling scheme, but [] provided no facts to buttress their claims that Defendants actually used these patients for that purpose").

11

Like the relators in *Clausen* and *Butler*, Relators here do not make the type of specific allegations that Rule 9(b) demands.[8]  Indeed, these Relators offer even less than the relator in *Clausen*, by not identifying a single patient.  They (1) do not identify any patient for whom Defendants illegitimately sought benefits, (2) do not provide copies of any alleged illegitimate Medicare billings, and (3) do not identify the dollar amounts of any alleged illegal Medicare claims.  *See Clausen*, 290 F.3d at 1306, 1312; *Corsello*, 428 F.3d at 1013-14.  It is simply not enough for plaintiffs in an FCA case to allege "systematic" behavior, or list perceived "incentives" to submit false claims – they must identify the actual false claims, which in this instance means identifying the specific patients allegedly re-certified without basis for continued Medicare hospice benefits.  "Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government."  *Corsello*, 428 F.3d at 1014; *see also Clausen*, 290 F.3d at 1311 ("The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asked the Government to pay amounts it does not owe.").

Besides not identifying specific patients, Relators improperly omit other details that would help identify the allegedly false claims.  For example, Relators do not allege when the allegedly fraudulent claims were submitted.  *See Clausen*, 290 F.3d at 1312 (affirming dismissal

---

[8]     Where 9(b) dismissals are denied or reversed, the allegations are even more specific.  *See, e.g., United States ex rel. Walker v. R&F Props. Of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005) (in cross-appeal, affirming denial of a motion to dismiss complaint alleging the submission of false claims for services rendered by nurse practitioners where plaintiff, a nurse practitioner, alleged that clinic billed all nurse practitioner and physician assistant services as "incident to the service of a physician," even though the nurse practitioners and physician assistants treated patients at clinics when no physician was physically present in the clinic, did not have their own billing numbers, were told each day which physician's billing number they were to use, and had discussed with the clinic office manager the propriety of these practices).

where plaintiff did not "allege with any specificity ... when any actual improper claims were submitted to the Government" and where "[n]o actual dates were alleged. . . ."); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (agreeing with district court that complaint failed to meet 9(b) requirements where, among other defects, it "failed to set forth dates as to the various FCA violations"); *United States ex rel. King v. Jackson County Hosp. Corp.*, No. 5:99CV73-SPM, 2001 WL 34104925, at *9 (N.D. Fla. Aug. 17, 2001) (same).

Relators also fail to identify any individual responsible for the alleged fraud. *See Carroll*, 2002 WL 31941007, at *5. In *Carroll*, the court held that, in a fraud case against corporate defendants, the complaint should specify "[the representatives] who took part in the alleged unlawful enterprise." The court applied this principle to dismiss the complaint even though the plaintiffs referred to categories of employees, such as nurses, personnel and physicians and named specific executives. The court took issue with the plaintiffs' failure to explain the roles played by individuals in these categories, stating that "[b]road references to nurses, clerk staff personnel, financial personnel and... physicians are not sufficiently detailed to conform to Rule 9(b) pleading requirements." *Id.* at *6; *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (affirming dismissal of FCA claims regarding medically unnecessary services because plaintiff "did not identify any specific physicians who referred patients for medically unnecessary services or any specific claims for medically unnecessary services that were submitted by defendants"); *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D. Ill. 1993) (same). It is simply not enough to withstand Rule 9(b) for these Relators to allege merely that "Vitas" re-certified patients unjustifiably and otherwise perpetrated a fraud. *See, e.g.*, Compl. ¶ 85. They must, but do not, allege more. *See also, Bledsoe*, 342 F.3d at 643 ("A complaint 'may not rely on blanket

13

references to acts or omissions by all of the 'defendants,' for each defendant is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'") (citation omitted).

Relators also fail to allege specifically where, or for which Vitas hospice program, allegedly fraudulent claims were submitted. Instead, they say only that "the pervasive fraud and false claims described herein occurred at VITAS' programs in Miami-Dade, Florida and Broward County, Florida and other Vitas programs elsewhere in Florida, California, Illinois, New Jersey, Ohio Pennsylvania and Wisconsin." Compl. ¶ 7. This statement is tantamount to an allegation that improper practices took place everywhere the defendants do business, an allegation much too imprecise to satisfy the pleading requirements of Rule 9(b). *See Corsello*, 428 F.3d at 1013 (allegations that improper practices took place "everywhere [defendant] does business throughout the statutory time period" are too vague to comply with the rule).

Relators' failure to allege their claims with specificity reinforces the total absence of any indicia of reliability for these claims. There are no allegations upon which this Court could conclude that Relators have a credible basis to assert the violations made in this sweeping Complaint. Relators merely allege that they are bringing this action based upon knowledge gained while employed by "Vitas" as "Director of Admissions" (Barys) and "Vice President – Hospice Operations Support" (Ostrom), Compl. ¶¶ 15, 17. Relators certainly have not alleged any basis for their allegations that individual patients were recertified for continued hospice care without basis; there is no allegation, for example, that these Relators participated at all in the process of determining eligibility for re-certification. Relators likewise do not allege that they witnessed the submission of a false claim to the government or were in a position to do so. This Complaint, in every way, lacks indicia of

14

reliability. *See, e.g., Corsello*, 428 F.3d at 1014 (dismissing complaint where allegations that plaintiff was "aware" of billing practices did not provide sufficient indicia of reliability and were "neither particular nor factually supported").

The Complaint's lack of particularity renders Vitas incapable of crafting an adequate response or defense. The point of Rule 9(b) is that defendants should not have to confront fraud claims such as these unless and until the plaintiff is able to make specific allegations about the alleged scheme. Moreover, requiring Relators to make more precise allegations will facilitate resolution of this case. After all, at trial Relators will have to demonstrate, from a clinical standpoint, why Vitas' recertification of individual hospice patients, based upon the professional judgment of one or more highly skilled physicians, were so unfounded that the Medicare hospice benefit requests made on behalf of these patients were false.[9] Relators will never be able to make that showing without proving the kind of specific patient detail they omit from the Complaint. For this reason as well, the Court should apply Rule 9(b) to dismiss Counts I and II.[10]

---

[9]     *See, e.g., United States v. Prabhu*, No. 2:04-CV-0589-RCJ-LRL, 2006 WL 2039973, at *15 (D. Nev. Jul. 20, 2006) (finding that Government failed to adduce any evidence in Medicare fraud action that, from a clinical standpoint, services were medically unnecessary as alleged); *United States ex rel. Phillips v. Pediatric Servs. of Am., Inc.*, 142 F. Supp. 2d 717, 730 (W.D.N.C. 2001) (granting summary judgment where plaintiff failed to demonstrate that "the patients did not have the diagnoses supplied on forms" provided to the government by doctors).

[10]     Nor have Relators provided enough detail to enable Vitas to prepare for discovery. The breadth of Relators' allegations could arguably encompass discovery of claims for *all* Medicare patients subject to a recertification of eligibility in multiple Vitas programs. The FCA does not provide a license for whistleblowers to root through the private records of numerous desperately ill patients to test their theory that some were not as ill as their physicians certified particularly where core allegations are "upon information and belief". Read in this context, Defendants submit that Rule 9(b) protects not only defendants in health care cases, but patients and their families whose privacy rights are well recognized in state and federal law. Without more specificity, few guideposts exist to isolate or locate the particular claims Relators contend are

## II.   RELATORS' CONSPIRACY CLAIM FAILS TO ALLEGE ESSENTIAL ELEMENTS.

Relators' claim in Count III that Vitas conspired to defraud the government in violation of the FCA's conspiracy clause suffers from the same Rule 9(b) defect as their substantive FCA counts, and should be dismissed on that basis.  In addition, Relators do not even allege the basic elements of a conspiracy.

Section 3729(a)(3) of the False Claims Act imposes liability on those who "conspire[ ] to defraud the government by getting a false or fraudulent claim allowed or paid."  31 U.S.C. § 3729(a)(3).  To state a claim under section 3729(a)(3), a plaintiff must show "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello*, 428 F.3d at 1014.  "The essence of a conspiracy under the Act is an agreement between two or more persons to commit [] fraud." *United States ex rel. Stinson et al. v. Provident Life & Accident Ins. Co.*, 721 F. Supp. 1247, 1259 (S.D. Fla. 1989).

Relators make just one reference to a conspiracy, alleging in Count III that "[b]y means of the acts described above, VITAS, its subsidiaries and affiliates conspired to defraud the United States Government by getting false or fraudulent claims allowed or paid."  Compl. ¶ 156. There is no allegation of an agreement, let alone an agreement involving the named Defendants. *See Carroll*, 2002 WL 31941007, at *5 (dismissing complaint where plaintiffs presented "no factual basis for its allegation that Defendants entered into a conspiracy to defraud the government" and provided no allegation of an agreement); *Stinson*, 721 F. Supp. at 1259

---

tainted by fraud, as opposed to a patient's good fortune or salutary response to palliative care. Neither Vitas, nor its patients, should be dragged into federal court merely on that basis.

16

(dismissing conspiracy count "void of any allegations of an agreement"). Relators' failure to allege an illicit agreement is made worse by the absence of any specific allegation of an overt act taken in furtherance of the supposed conspiracy. *See Atkins*, 345 F. Supp. 2d at 1305 (dismissing complaint where complaint contained "very general allegation that fifteen defendants entered into a conspiracy to defraud the United States, but does not allege any overt act in furtherance of the alleged very broad conspiracy and does not allege that any defendant presented a false claim to an officer or employee of the United States.").[11]

Where, as here, allegations of a civil conspiracy are "vague and would require speculation on the part of Defendants and the Court, such claims are subject to dismissal." *Carroll*, 2002 WL 31941007, at *5 (internal citation omitted). Taking that principle to heart, in *Corsello* the Eleventh Circuit affirmed the dismissal of a complaint where the plaintiff alleged that two defendants "conspired to defraud the Government," but failed to support the statement by specific allegations of any agreement or overt act. 428 F.3d at 1014 (finding inadequate the "bare legal conclusion" that defendants "conspired to defraud the Government"). This Court should reach the same result here.

## III.  PLAINTIFF BARYS DOES NOT ALLEGE THE ELEMENTS OF A RETALIATORY DISCHARGE CLAIM UNDER THE FCA.

Count IV of the Complaint, the retaliatory discharge claim brought by Barys, should be dismissed because Barys fails to allege essential elements of a cause of action under that provision.

---

[11]    The complaint does not even clearly identify the participants in this alleged conspiracy, stating merely that "Vitas" (broadly defined) conspired with its subsidiaries and affiliates. Given Relators' apparent view that all Vitas entities are one and the same, their failure to clarify the participants in this conspiracy is even more problematic.

The FCA prohibits retaliation against an employee who engages in activity protected by the FCA:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). The prima facie elements of an FCA retaliation claim are (1) that the plaintiff engaged in protected activity, (2) that the plaintiff's employer knew about the protected activity, and (3) that the employer discharged or otherwise discriminated against the plaintiff as a result of the protected activity. *See, e.g., Robinson v. Jewish Ctr. Towers, Inc.*, 993 F. Supp. 1475, 1477 (M.D. Fla. 1998).

To prove the first two elements of the offense a plaintiff must show a "distinct possibility" that an FCA claim would be filed by the employee or by the government at the time she engaged in the protected conduct, and that her employer was aware of that possibility. *See Childree v. UAP/GA AG Chem, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996). Barys does not allege any of those facts. According to the Complaint:

> Relator, Barys, specifically addressed her concerns about excessive [lengths of stay] with General Manager, Dian Backoff and Vice President, Hospice Operations, Ian Viente. Barys was told by Backoff to 'worry about your own business because VITAS doesn't want Medicare coming into the program again like they did in 1997 when they discharged 100 patients.'

> Barys was terminated shortly after reporting her concerns about excessive [lengths of stay].

> Based on Barys' concerns regarding excessive [lengths of stay], Barys ran a VITAS report concerning [lengths of stay]. This report was in a folder on her desk on the day she was fired by Vitas.

18

Compl. ¶¶ 138-40. Nowhere does Barys allege that, at the time she raised her "concerns," she was contemplating an FCA claim against Vitas, or that the government was contemplating such a claim. Nor does she allege Vitas had reason to believe that such a claim, by Barys or the government, was a distinct possibility. Absent these allegations, her retaliation claims fail. *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948 (5th Cir. 1994) (rejecting FCA retaliation claim where plaintiff voiced concerns about overcharging to his superiors, but never referred to the overcharging as illegal, never voiced an intention to file a *qui tam* claim, and never spoke to government officials about such a claim); *cf. Childree*, 92 F.3d at 1146 (allowing retaliation claim where employee had "provided extensive information about her employer's fraudulent" conduct to government officials); *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1314 (M.D. Ala. 1999) ("distinct possibility" test met when plaintiff had spoken with government auditor and auditor had informed company president about plaintiff's concerns). All Barys alleges is that she notified two individuals at Vitas of unspecified "concerns" with regard to "excessive [lengths of stay]." That is not enough.

Barys also fails to allege how reporting her unspecified "concerns" resulted in her termination, the third element of a retaliation claim. *See Mack v. Augusta-Richmond County, GA.*, No. 05-12747, 148 Fed. Appx. 894, 897 (11th Cir. 2005) (affirming district court's order granting summary judgment where plaintiff was unable to establish that his termination was retaliatory); *Karvelas*, 360 F.3d at 240 (same). Barys does not allege that that she was fired for raising her concerns about excessive lengths of stay. Nor does she establish any link between her firing and the Vitas report, because Barys admits that she, not Vitas, ran the report, and does not allege that she provided this report to her supervisors or that her supervisors placed it on her desk while announcing her termination. Barys does not even allege that the unspecified persons

responsible for firing her knew about the "concerns" she allegedly had raised with two Vitas employees.[12]

Even when Rule 9(b) does not come into play, some pleading threshold does exist, and plaintiffs are prohibited from relying upon vague or conclusory allegations. *See, e.g., Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("'Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist'"); *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1025 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal"); *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."). Conclusory allegations aside, Barys' *factual* allegations do not establish a colorable claim of retaliation, and therefore Count IV should be dismissed.

### Conclusion

For all of the foregoing reasons, Defendants Vitas Healthcare Corporation, Vitas Hospice Services, LLC and Vitas Healthcare Corporation of Florida request that the Court grant this motion to dismiss and dismiss the Relators' Complaint.

---

[12] Barys does not even allege which Defendant employed her. *See Cook County v. United States ex rel. Chandler*, 123 S. Ct. 1239, 1243 n.4 (2003) (noting that plaintiff's FCA retaliation claims were dismissed because the named defendant was not her employer).

Respectfully submitted,

HOGAN & HARTSON, L.L.P.
Mellon Financial Center – 19th FL
1111 Brickell Avenue
Miami, Florida 33131
Telephone:     (305) 459-6500
Facsimile:     (305) 459-6550

By:   *Carol A Licko*

Carol A. Licko, Esq.
Florida Bar Number:  435872
calicko@hhlaw.com
Stephanie L. Carman, Esq.
Florida Bar Number:  499463
slcarman@hhlaw.com

and

Peter S. Spivack, Esq.*
psspivack@hhlaw.com
HOGAN & HARTSON, L.L.P.
555 13th Street, N.W.
Washington, D.C. 20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910
*Motion to Appear Pro Hac Vice Pending

*Counsel for Defendants Vitas Healthcare
Corporation, Vitas Hospice Services, LLC and Vitas
Healthcare Corporation of Florida*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S.

mail and facsimile on September 25, 2006 on all counsel or parties of record on the attached

service list.

By:   *Carol A Licko*

Carol A. Licko

21

## **SERVICE LIST**

## **CASE NO. 04-21431-CIV-JORDAN/BROWN**

Bruce D. Fischman, Esq.
bruce@fhdlaw.com
Adam Feldman, Esq.
adam@fhdlaw.com
Fischman, Harvey & Dutton, P.A.
3050 Biscayne Boulevard, Suite 600
Miami, Florida 33137
Telephone:  (305) 576-5522
Facsimile:  (305) 576-7079
*Attorneys for Relators Barys and Ostrom*

Peter S. Spivack, Esq.
psspivack@hhlaw.com
HOGAN & HARTSON, L.L.P.
555 13th Street, N.W.
Washington, D.C. 20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910
*Attorneys for Defendants Vitas Healthcare Corporation, Vitas Hospice Services, LLC and
Vitas Healthcare Corporation of Florida*

Carol A. Licko, Esq.
calicko@hhlaw.com
Stephanie L. Carman, Esq.
slcarman@hhlaw.com
HOGAN & HARTSON, L.L.P.
Mellon Financial Center, 19th Floor
1111 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 459-6500
Facsimile:  (305) 459-6550
*Attorneys for Defendants Vitas Healthcare Corporation, Vitas Hospice Services, LLC and
Vitas Healthcare Corporation of Florida*

Jullia Callahan, Esq.
Jullia.Callahan@usdoj.gov
United States Department of Justice
Patrick Henry Building, Room 9537
601 D Street
Washington, D.C. 20004
Telephone:  (202) 616-0291
Facsimile:  (202) 514-0280
*Attorneys for the United States*

1

Mark Bodner, Esq.
Mark_Bodner@oag.state.fl.us
Office of the Attorney General
Autonation Tower, 10th Floor
110 SE 6th Street
Ft. Lauderdale, Florida 33301
Telephone:  (954) 712-4600
Facsimile:  (954) 467-4994
*Attorneys for the State of Florida*
        and
Mark.Bodner@usdoj.gov
U.S. Attorney's Office for the Southern District of Florida
99 NE 4th Street, Suite 300
Miami, Florida 33132-2111
Telephone:  (305) 961-9001
Facsimile:  (305) 350-7679
*Attorneys for the United States*