# EXHIBIT "D"

### Office of Inspector General

### Publication of the Medicare Advisory Bulletin on Hospice Benefits

**AGENCY:** Office of Inspector General, HHS.

**ACTION:** Notice.

**SUMMARY:** This Federal Register notice sets forth a recently issued Advisory Bulletin, in conjunction with Operation Restore Trust, that identifies important eligibility and other information involving the current Medicare hospice benefit. This Advisory Bulletin has been made available to consumers, health care professionals and health care associations, and is now being reprinted in this issue of the Federal Register as a means of ensuring public awareness of the purposes of hospice care and the consequences of electing the Medicare hospice benefit.

**FOR FURTHER INFORMATION CONTACT:** Joel J. Schaer, Office of Management and Policy, (202) 619-0089.

**SUPPLEMENTARY INFORMATION:** This Medicare Advisory Bulletin is part of Operation Restore Trust—a joint effort among the Office of Inspector General (OIG), the Health Care Financing Administration (HCFA) and the Administration on Aging within the Department of Health and Human Services to combat fraud, waste and abuse in the Medicare and Medicaid programs. The purpose of this Advisory Bulletin is to inform consumers and health care professionals about certain questionable practices affecting Medicare's hospice program. The issuance calls specific attention to the possible misuse of the hospice benefit, as uncovered through collaborative work undertaken by the OIG and HCFA.

Specifically, the Advisory Bulletin highlights several practices which indicate that some hospice providers may have inappropriately maximized their Medicare reimbursements at beneficiary expense. These practices include:

- Making incorrect determinations of a person's life expectancy for purposes of meeting hospice eligibility criteria;
- Engaging in marketing and sales strategies that offer incomplete or inadequate information about Medicare entitlement under the hospice program to induce beneficiaries to elect hospice and thereby waive aggressive treatment options that Medicare would otherwise cover; and
- Encouraging hospice beneficiaries to temporarily revoke their election of hospice during a period when costly services covered by a plan of care are needed in order for the hospice to avoid the obligation to pay for such services.

A reprint of this Medicare Advisory Bulletin follows.

Medicare Advisory Bulletin— Questionable Practices Affecting the Hospice Benefit October 1995

The Department of Health and Human Services administers the Medicare program for the benefit of 38 million elderly and disabled Americans. In May 1995, the Secretary of Health and Human Services announced Operation Restore Trust, a joint project of the Office of Inspector General, the Health Care Financing Administration and the Administration on Aging. Among its objectives, Operation Restore Trust seeks to identify vulnerabilities in the Medicare program, and pursue ways to reduce Medicare's exposure to fraud, waste and abuse.

This Advisory Bulletin is a product of Operation Restore Trust. The bulletin describes some potentially abusive practices which have been identified through examination of the Medicare hospice benefit.

*What Is Medicare's Hospice Program?*

The goal of hospice care is to help terminally ill patients continue with their normal activities of daily living as comfortably as possible, while remaining primarily in a home environment. To achieve this goal, the Medicare program shifts the focus of medical attention from curative treatment seeking to reverse an underlying disease or condition to palliative or supportive care, including a wide range of medical, social, and emotional supportive services.

To be eligible for hospice services under Medicare, an individual must be certified as terminally ill by hospice medical staff and the individual's attending physician if he or she has one. Terminal illness is defined as a medical prognosis that the patient's life expectancy is 6 months or less if the terminal illness runs its normal course. The Medicare beneficiary's inclusion in a hospice program is voluntary and can be revoked by the beneficiary at any time.

The decision to elect the hospice benefit has significant consequences because the beneficiary waives the right to receive standard Medicare benefits, related to the terminal illness, including all treatment for the purposes of curing a terminal illness. Hospice coverage is divided into four discrete election periods, during each of which the beneficiary must be certified as terminally ill. The fourth and last election period has an indefinite duration, unless or until the beneficiary no longer meets the eligibility requirement of a prognosis of 6 months or less to live.

*What Problems Have Been Identified?*

In the course of reviewing trends in Medicare's hospice program, the Office of Inspector General has learned of activities that should be of concern to beneficiaries who are in hospice or who are considering the option of hospice. These questionable practices primarily involve issues of hospice enrollment and are the subject of ongoing analysis by the Medicare program and, in appropriate cases, investigations and audits by the Office of Inspector General. Some hospice providers, in efforts to maximize their Medicare reimbursement, may knowingly engage in one or more of the following activities:

- Making incorrect determinations of a person's life expectancy, for the purposes of meeting hospice eligibility criteria.
- Engaging in marketing/sales strategies that offer incomplete or inadequate information about Medicare entitlement and restrictions under the hospice program, in order to induce beneficiaries to elect hospice and thereby waive other treatment benefits.
- Encouraging hospice beneficiaries or their representatives to temporarily revoke their election of hospice during a period when costly services covered by the hospice plan of care are needed, so that the hospice may avoid the obligation to pay for these services.

*Important Features of the Medicare Hospice Benefit*

- *The hospice benefit is restricted to patients with a diagnosis of terminal illness and prognosis of 6 months or less to live.*

In several recent medical reviews of beneficiary eligibility for hospice, the Office of Inspector General has found significant inaccuracies in the determinations of terminal illness. These findings have prompted a concern that some hospices may intentionally misrepresent a condition as terminal in order to secure Medicare reimbursement. For instance, investigators have encountered hospices that asked nurse employees to alter notes in patients' records or to otherwise misrepresent patients' medical conditions, in order to falsify the existence of a terminal condition.

There have also been cases where physician certifications of terminal illness have been medically questionable. If a hospice submits claims to Medicare under circumstances

**55722**  Federal Register / Vol. 60, No. 212 / Thursday, November 2, 1995 / Notices

where it knows of the absence of a terminal condition, the hospice may be liable for the submission of false claims. Criminal penalties can also be imposed against persons who knowingly and willfully make false representations about a patient's medical condition which are used to determine eligibility for payment of Medicare or Medicaid benefits.

• *A hospice should not refuse to address health care needs relating to a beneficiary's terminal diagnosis.*

Once a Medicare beneficiary elects hospice care, the hospice is responsible for furnishing directly, or arranging for, all supplies and services that relate to the beneficiary's terminal condition, except the services of an attending physician. Hospice beneficiaries have the right to receive covered medical, social and emotional support services from the hospice directly, or through arrangements made by the hospice, and should not be forced to seek or pay for such care from non-hospice providers.

When a beneficiary is receiving hospice care, the hospice is paid a predetermined fee for each day during the length of care, no matter how much care the hospice actually provides. This means that a hospice may have a financial incentive to reduce the number of services provided to each patient, since the hospice will get paid the same amount regardless of the number of services provided.

Medicare has received complaints about hospices neglecting patient needs and ignoring reasonable requests for treatment. One individual reported that his wife's hospice failed on three separate occasions to respond to telephonic requests for emergency services. He was forced to call a non-hospice physician who arranged for hospitalization. His wife's care required a 26-day length of stay. Although the hospital contacted the hospice the day following admission, the hospice did not visit the patient or in any way coordinate her care during the hospital stay.

The Office of Inspector General also has uncovered situations where duplicate claims were submitted by a hospice and other providers (such as skilled nursing homes and hospitals) for services related to the beneficiary's terminal illness. In a nationwide audit of services provided to Medicare beneficiaries enrolled in hospice programs, approximately $21.6 million was improperly paid to hospitals and nursing homes for the treatment of hospice beneficiaries. Hospices are required to make financial arrangements for hospitalization, nursing services and all other health care needs related to the beneficiary's terminal illness and included in the hospice plan of care. The cost of these services should be paid by the hospices.

• *A beneficiary has a right to expect a hospice to provide complete and accurate information about the consequences of hospice election and revocation.*

A hospice is obligated to inform beneficiaries or their representatives that by electing the hospice benefit, they waive all rights to curative treatment or other standard Medicare benefits related to the terminal illness, except for the services of an attending physician. Some hospices inappropriately induce beneficiaries or their representatives to enroll in the hospice program without explaining that hospice election results in forfeiture of curative treatment benefits under Medicare. For instance, some hospices have solicited the beneficiary's neighbors and friends, who in some jurisdictions may act as beneficiary representatives, and who may not be familiar with the beneficiary's medical condition. In these situations, the beneficiary and/or representative may not appreciate that traditional Medicare benefits will be denied once the hospice benefit is elected.

The Office of Inspector General also has learned of hospices which induce beneficiaries to revoke the hospice election if expensive palliative treatment, even for a temporary period, becomes necessary. As a consequence, beneficiaries may then be burdened with substantial co-payments that would not be charged under hospice. It is especially important to note that when a beneficiary revokes the hospice election during the last election period, re-enrollment in the Medicare hospice benefit will be precluded permanently.

*You Should Be Alert to the Following Questionable Activities*

• Hospice recruiters failing to notify prospective patients or their representatives that they will no longer be entitled to Medicare coverage of curative treatment if they elect the hospice benefit.

• Hospice personnel inducing beneficiaries to revoke their hospice election when more costly treatment is needed.

• A hospice refusing or failing to provide or arrange for needed care;

• Nursing home residents being induced to elect hospice but not receiving the additional benefits of hospice care;

• Non-hospice providers charging Medicare for services to hospice patients that hospices can and should provide, such as counseling or medical equipment.

*What To Do With Information About Questionable Practices Involving Hospice*

If you have questions about the scope of the hospice benefit or the care you are receiving in hospice, you should first consider discussing these matters with your attending physician or the hospice provider. If you wish to report questionable practices, call or write: 1-800-HHS-TIPS, Department of Health and Human Services, Office of Inspector General, P.O. Box 23489, L'Enfant Plaza Station, Washington, D.C. 20026-3489.

Dated: October 23, 1995.

June Gibbs Brown,

*Inspector General.*

[FR Doc. 95-27217 Filed 11-1-95; 8:45 am]

BILLING CODE 4150-04-P

---

**National Institutes of Health**

**National Institute of General Medical Sciences; Notice of Cancellation of Meeting**

Notice is hereby given of a cancellation of the meeting of the following committee on the National Institute of General Medical Sciences for November 1995, which was published in the Federal Register Notice on September 15, (60 FR 47951).

*Name of Committee:* Genetic Basis of Disease Review Committee.

*Dates of Meeting:* November 6-7, 1995.

*Place of Meeting:* National Institutes of Health, 45 Center Drive, Natcher Building, Room F2, Bethesda, MD 20892-6200.

*Closed:* November 6, 8:30 a.m.—5 p.m., November 7, 8:30 —adjournment.

The meeting was canceled due to administrative complications.

Dated: October 30, 1995.

Susan K. Feldman,

*Committee Management Officer, NIH.*

[FR Doc. 95-27255 Filed 11-1-95; 8:45 am]

BILLING CODE 4140-01-M

---

**National Heart, Lung, and Blood Institute; Notice of Meeting**

Notice is hereby given of the meeting of the National Heart Attack Alert Program Coordinating Committee, sponsored by the National Heart, Lung, and Blood Institute on Tuesday, December 12, 1995, from 8:30 a.m. to 3:30 p.m. at the Bethesda Marriott Hotel, 5151 Pooks Hill Road, Bethesda, Maryland 20814 (301) 897-9400.

The entire meeting is open to the public. The Coordinating Committee is meeting to examine policies and trends in the emerging managed care